UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO.  3:01CR123 (AHN) |
| HENRY REARDON | : | July 11, 2008 |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S NOTICE
REGARDING MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)**

Henry Reardon, by and through counsel, respectfully requests that the Court reduce his sentence from 168 months' incarceration to 135 months' incarceration pursuant to 18 U.S.C. § 3582(c). The government agrees that Mr. Reardon's sentence should be reduced to 135 months' incarceration. See Govt's Notice at 1, 9.

**I.	Procedural History**

Mr. Reardon pleaded guilty to one count of conspiracy to possess with intent to distribute more than 50 grams of crack cocaine, and one count of felon in possession of a firearm. The parties stipulated that the offense involved between 150 grams and 500 grams of crack cocaine (specifically 172 grams of crack cocaine were attributed to Mr. Reardon, see PSR ¶ 18). On October 16, 2001, Mr. Reardon was sentenced to 168 months' incarceration, the low-end of his guideline range of 168 to 210 months. On June 3, 2008, the government filed a Notice Regarding Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c) stating that "the Court should issue an amended judgment and impose a reduced sentence of 135 months' incarceration, which accounts for a two-level reduction in the crack cocaine guidelines." Govt's Notice at 1. Probation has also submitted an addendum to the presentence report stating that Mr. Reardon has a revised guideline range of 135 to 168 months' incarceration.

**II.	Background to Amendment 706**

In four reports to Congress, the Sentencing Commission set forth its findings that crack cocaine penalties were unjustified when considering the purposes of sentencing, were unfair, and had a disproportionate impact on African Americans. USSC, Cocaine and Federal Sentencing Policy (February 1995); USSC, Cocaine and Federal Sentencing Policy (April 1997); USSC, Cocaine and

Federal Sentencing Policy (May 2002); USSC, Cocaine and Federal Sentencing Policy (May 2007). In the face of longstanding Congressional inaction, the Commission took a first step to "somewhat alleviate" these "urgent and compelling problems," by enacting a two-level reduction in the base offense levels for crack, which became law on November 1, 2007. USSC, Cocaine and Federal Sentencing Policy 9 (May 2007). On December 11, 2007, the Commission voted that the amendment should apply retroactively to persons sentenced before November 1, 2007 because "the statutory purposes of sentencing are best served by retroactive application of the amendment." See USSC Press Release, U.S. Sentencing Commission Votes Unanimously to Apply Amendment Retroactively for Crack Cocaine Offenses (Dec. 11, 2007), available at http://www.ussc.gov/PRESS/rel121107.htm. According to the Commission, the amendment is "only a partial remedy to some of the problems associated with the 100-to-1 [powder cocaine to crack cocaine] quantity ratio." USSC, Cocaine and Federal Sentencing Policy 9-10 (May 2007).

**III.    Mr. Reardon clearly qualifies for a reduction**

The parties agree in this case that the crack amendments have lowered Mr. Reardon's guideline sentencing range by two levels and that he thus qualifies for a reduction of his sentence. See 18 U.S.C. § 3582(c)(2) ("in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable . . .").

**IV.    A new sentence of 135 months' incarceration would foster all of the § 3553(a) sentencing factors**

Before turning to the § 3553(a) sentencing factors, it is important to consider the landmark case of Kimbrough v. United States as its holding and analysis are instructive regarding whether a full reduction is warranted in this case.

    **A.    *Kimbrough v. United States*, 128 S.Ct. 558 (2007)**

In Kimbrough, a case supported by the votes of seven justices, the Supreme Court held that a

judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine when deciding whether a within-Guidelines sentence is greater than necessary to further the goals of sentencing pursuant to 18 U.S.C. § 3553(a). Id. at 564. Even in a mine-run crack case, the Court emphasized, it would not be an abuse of discretion for a sentencing court to conclude, based on crack/powder disparity, that a within-Guidelines sentence was greater than necessary. Id. at 575.

In reaching its holding, the Court explained that when the Sentencing Commission was creating the Guidelines it studied 10,000 presentence investigation reports in order to formulate conclusions about sentencing practices. Id. at 567. Based on this research, each guideline was designed to approximate a sentence that might achieve § 3553(a)'s objectives, and a district court's decision to grant a non-Guidelines sentence would attract the greatest respect when it explains that a particular case is outside the heartland. Id. at 574-75. For the same reasons, closer appellate review might be appropriate when the sentencing judge varies solely based on his or her own view that the Guidelines fail to promote the § 3553(a) factors even in a mine-run case. Id. at 575. However, a crack case must be viewed differently because the crack Guidelines were not based on the "Commission's exercise of its characteristic institutional role." Id. The Commission did not use the same empirical method when writing the guidelines for drug offenses, instead using the 1986 Act's weight-driven system and adopting Congress's 100-to-1 ratio. Id. The Court explained,

> In formulating Guidelines ranges for crack cocaine offenses . . . the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of empirical data and national experience . . . Indeed, the Commission itself has reported that **the crack/powder disparity produces disproportionately harsh sanctions, *i.e.*, sanctions for crack cocaine offenses greater than necessary in light of the purposes of sentencing set forth in § 3553(a)**.

Id. at 575 (internal quotations and citations omitted) (emphasis added).

In deciding Kimbrough, the Supreme Court carefully reviewed the Sentencing Commission's special reports to Congress in 1995, 2002, and 2007 and cited its conclusions. It is important to summarize some of the Commission's findings here. Crack cocaine and powder cocaine produce the same physiological and psychotropic effects and the active ingredient in powder and crack cocaine is

the same. Id. Although crack produces a shorter, more intense high because it is smoked, more recent research and data suggest that the relative harmfulness of crack is far overstated. Id. at 568. The relative prevalence of certain harmful conduct associated with their use and distribution has also been found to be misplaced. Id. For example, crack is associated with "significantly less trafficking-related violence . . . than previously assumed . . . [;]the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure . . . [and] the epidemic of crack cocaine use by youth never materialized to the extent feared." Id. (internal quotations and citations omitted).

Additionally, the 1986 Act's goal of punishing major drug dealers more severely than low-level dealers has not worked with the disparity. Id. The 100-to-1 ratio often leads to the aberrant result that retail crack dealers get much longer sentences than the wholesale distributors who supply them with the powder. Id. (The 100:1 disparity "means that a major supplier of powder cocaine may receive a shorter sentence than a low-level dealer who buys powder from the supplier but then converts it to crack.") Finally, the disparity promotes "disrespect for and lack of confidence in the criminal justice system because of a widely-held perception that it promotes unwarranted disparity based on race . . ." Id. Approximately 85 percent of defendants convicted of crack offenses in federal court are black. Id.

Based on its findings, the Commission first recommended in 1995 that the ratio be eliminated entirely (with special enhancements for cases involving weapons and bodily injury) and when Congress did not act and punted the issue back to the Commission for another recommendation, the Commission next suggested a ratio of 5-to-1 (1997) and then lowering it to at least 20-to-1 (2002). Id. at 569. But Congress never acted. In the Commission's own words, the recent amendments are 'only . . . a partial remedy,' Id. The Supreme Court in Kimbrough calls the crack amendments "modest," yielding crack sentences two to five times longer than powder sentences with equal weight. Id. Put another way, the current Guidelines have a crack/powder ratio "that varies (at different offense levels) between 25 to 1 and 80 to 1." Id. at 573.

Turning to the particular facts of Kimbrough, the district court judge considered the case to be

-4-

an unremarkable drug trafficking offense. Id. at 575. Kimbrough was sitting in a car with 56 grams of crack cocaine, 92.1 grams of powder cocaine, and a firearm. Id. at 565, 575. The district court found that because Kimbrough had no prior felony convictions, had received an honorable discharge from the Marine Corps after serving in combat, and had steady employment, and because the 100-to-1 crack/powder ratio had been debunked by the Commission, a variance from a Guidelines range of 228-270 down to 180 months' imprisonment (the mandatory minimum) was warranted. Id. at 575-76. Thus, the Supreme Court upheld a variance of four and one-half years below the bottom of the Guidelines range. The Court noted with approval that the sentencing judge did not establish an alternative crack/powder ratio on his own but instead "properly homed in on the particular circumstances of Kimbrough's case and accorded weight to the Sentencing Commissions's consistent and emphatic position that the crack/powder disparity is at odds with § 3553(a)." Id. at 576.

**B.    Application of *Kimbrough* and 18 U.S.C. § 3553(a) to this case**

Regarding the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment and deterrence; and the need to avoid unwarranted sentence disparities among defendants convicted of similar conduct, a comparison of what Mr. Reardon's sentencing range would have been if powder cocaine had been sold instead of crack cocaine is important.

If the § 2D1.1 drug table for 100 to 200 grams of powder cocaine had been used to calculate Mr. Reardon's Guidelines range (as defendant was responsible for 172 grams of crack cocaine, see PSR ¶ 18), Mr. Reardon's Guidelines range would have been 57 to 71 months' incarceration (assuming the gun count ran concurrent) instead of 135 to 168 months' incarceration pursuant to the crack amendments.[1] This difference is striking and Kimbrough instructs that courts may take this disparity into account when sentencing for crack offenses. See also United States v. Jones, — F.3d —, 2008 WL

---

[1] This takes into account the 109 grams of heroin attributed to Mr. Reardon. When the powder cocaine and heroin is converted to marijuana, and the applicable enhancements and reductions are made, a range of 57 to 71 months' incarceration is arrived at.

2500252 (2d Cir. June 24, 2008). Clearly a revised sentence of 135 months' incarceration, more than twice what Mr. Reardon would have faced based on a comparable amount of powder cocaine, accounts for any continued justified disparate treatment regarding the seriousness of crack versus powder cocaine offenses.

Regarding Mr. Reardon's conduct while in prison (he has been detained since his arrest on June 12, 2001), although he has had three relatively minor, and non-violent, infractions while in prison, he has had no reported infractions since March 2005. See Govt's Notice at 1, footnote 1. Similarly, the Addendum to the presentence report notes that Mr. Reardon is currently enrolled in a GED program with "satisfactory progress." In short, neither the government nor probation believe that Mr. Reardon's conduct while in prison, or anything else, should in any way preclude a full reduction in this case.

## V.   Conclusion

For all of the above reasons, Mr. Reardon respectfully requests that his sentence be reduced from 168 months' incarceration to 135 months' incarceration. According to probation, Mr. Reardon's revised projected release date based on a reduced sentence to 135 months' incarceration would be March 30, 2011.

>Respectfully submitted,
>
>THE DEFENDANT,
>HENRY REARDON
>
>THOMAS G. DENNIS
>FEDERAL DEFENDER

Dated: July 11, 2008
/s/
Ronald B. Resetarits
Asst. Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Bar No. ct26519
(203) 498-4200
Email: ronald.resetarits@fd.org

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on July 11, 2008, a copy of the foregoing Response to Government's Notice Regarding Motion to Reduce Sentence was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/
Ronald B. Resetarits